UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
NO. 3:15-cv-00309-FDW-DCK

| | |
|---|---|
| Genger POOLE, ) | |
| *As Administratrix of the Estate of* WILLIAM ) | |
| DEAN POOLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | ORDER |
| vs. ) | |
| ) | |
| GASTON COUNTY, J. E. KNUPP, W. P. ) | |
| DOWNEY, T. R. EARL, A. O. HOLDER ) | |
| ) | |
| Defendants. ) | |

THIS MATTER is before the Court on Motions to Dismiss filed by Defendants Knupp, Downey, Earl, Holder, (Doc. No. 22), and Gaston County (Doc. No. 24). Defendants Knupp, Downey, Earl, and Holder (collectively, "Individual Defendants") claim qualified immunity against Plaintiff's claim of excessive force as well as governmental immunity and public officer immunity against Plaintiff's state law claims. (Doc. No. 23, p. 7–13). Defendant Gaston County asserts governmental immunity against the state law claims and qualified immunity for the excessive force and failure to train claims. (Doc. No. 25, p. 9). Gaston County also seeks to dismiss Plaintiff's claims for excessive force and ADA violations under Rule 12(b)(6). Id. at 2. Defendants' immunity arguments to dismiss are made pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure, and in the alternative, they ask for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Doc. No. 22, p. 1; Doc. No. 24, p. 1). For the reasons stated below, Defendants' Motions to Dismiss and Motions for Summary Judgment are GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART.

1

## I. Background

Based on the parties' briefs and pleadings, the following facts are not in dispute.[1]  On March 16, 2015, decedent William Poole called the Veteran's Crisis Line and expressed an intention to commit suicide. (Doc. No. 26, p. 6).  The Veteran's Crisis Line then called 911.  Police were dispatched to the scene and observed Decedent on a lawn mower alone in the yard.  (Doc. No. 22-11, p. 2).  Police approached Decedent, and after a brief confrontation, Decedent was shot by multiple officers and killed.  Plaintiff does not dispute these facts, and these facts mirror the alleged facts in the Complaint.  (Doc. No. 2).

There are factual disputes about the actual confrontation.  Defendants have submitted affidavits from the responding officers that say Decedent, upon seeing police, drew a firearm from a holster, raised the firearm in the air, and lowered the firearm towards the police officers.  (Doc. Nos. 20-10, 20-11, 20-12, 20-13).  The officers allegedly responded to this action by discharging their weapons and killing Decedent.  Id.  In contrast, Plaintiff alleges that Decedent did not brandish a weapon and complied with police orders.  (Doc. No. 2, p. 5).  Plaintiff has submitted an affidavit from a neighbor, J.C. Dowell.  (Doc No. 26-4).  Dowell says he was an eyewitness to the confrontation and stated that Decedent appeared to cooperate with police requests to raise his hands in the air.  Id. at 3.  Dowell also alleges that Decedent did not have a gun in his hand when he raised them in the air but instead may have been holding a wallet.  Id.

Plaintiff, Decedent's wife and estate representative, brought this suit against Gaston

---

[1] The Court has considered matters outside the Complaint and pleadings for its ruling on qualified immunity and governmental immunity.  For that portion of the instant motion that moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court limited its analysis to only those allegations on the face of the Complaint.  Nevertheless, for purposes of providing background, the Court summarizes the contentions of the parties, including allegations contained outside the pleadings.

County, as well as Individual Defendants, who were the responding officers to the scene. Plaintiff includes five claims (referred to as "counts") in the Complaint. (Doc. No. 2, p. 5). Plaintiff's first claim alleges that Gaston County infringed upon Decedent's Fourth Amendment rights by allowing or encouraging police officers to use unjustified deadly force. Id. at 5. Plaintiff's second claim alleges that Individual Defendants used excessive and unreasonable force in violation of Decedent's Fourth Amendment rights. Id. at 7. Plaintiff's third claim is for "Public Entity Liability" which alleges that Gaston County failed to train its officers on the proper use of force when dealing individuals in emotional distress or suffering a mental health crisis. Id. at 8. Plaintiff seeks recovery for the first three claims under 42 U.S.C. § 1983, which provides a cause of action for Constitutional right violations. Id. at 5–8. Plaintiff's fourth claim is a state law claim of assault and battery against all Defendants. Id. at 9. Plaintiff's fifth claim[2] alleges that Gaston County discriminated against Decedent in violation of the Americans with Disabilities Act by failing to provide reasonable accommodations to communicate. Id.

## II.     Legal Standard

With regards to the federal claims of excessive force (claim 1), Gaston County moves for dismissal under Rule 12(b)(6) for failure to state a claim. (Doc. No. 24, p. 1). Gaston County asserts qualified immunity for Plaintiff's third claim of "Public Entity Liability" and governmental immunity for the state law claim of assault and battery (claim four). Id. at 2. Finally, Gaston County moves for a 12(b)(6) dismissal of Plaintiff's claim for recovery under the Americans with Disabilities Act.

---

[2] The Court notes that Plaintiff's Complaint mistakenly labels count 4 (Assault and Battery) twice. (Doc. No. 2, p. 9).

Individual Defendants seek dismissal of the excessive force claim (claim two) on the grounds of qualified immunity. (Doc No. 22, p. 2). For the assault and battery claim, Individual Defendants assert that they are entitled to governmental immunity for the assault and battery claim in their official capacities and entitled to public officer immunity in their individual capacities.

All Defendants contend that qualified immunity results in dismissal under Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure. (Doc. No. 22, p. 2; Doc. No. 24, p. 2). However, the cases they cite to support the contention that 12(b)(1) and 12(b)(2) applies to qualified immunity relate to state governmental immunity from state claims and do not extend to federal claims and qualified immunity. See Frye v. Brunswick Cty. Bd. of Educ., 612 F. Supp. 2d 694, 701 (E.D.N.C. 2009) ("The governmental immunity defense *under North Carolina law* presents a question of jurisdiction.") (emphasis added). Individual Defendants also request dismissal based on qualified immunity under Rule 12(b)(6). (Doc. No. 22, p. 2). All Defendants further request summary judgment in the alternative. (Doc. No. 22, p. 1; Doc. No. 24, p. 1).

The Supreme Court has consistently held that the qualified immunity defense may be determined on a motion for summary judgment, even when asserted before discovery. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Anderson v. Creighton, 483 U.S. 635, 637 (1987). Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Furthermore, this court must view the evidence "in the light most favorable to the opposing party." Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)).

Dismissal under Rule 12(b)(6) may also be appropriate if a plaintiff has not pled enough facts to make their claim plausible. Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009). In order to

be plausible, a complaint must contain sufficient factual matter "that allows the court to draw the reasonable inference that the defendant is liable." Iqbal, 556 U.S at 678. While a high level of factual detail is not required, a complaint needs more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007)). Only plausible claims can "survive[] a motion to dismiss" and "unlock the doors of discovery." Iqbal, 556 U.S. at 678.

### III.    Analysis

A. <u>Federal Claims of Excessive Force and Failure to Train</u>

All Defendants contend that they are entitled to qualified immunity on Plaintiff's civil rights claims under §1983. Qualified immunity is a doctrine that protects government officials from civil liabilities, as long as their conduct does not reasonably violate clearly established statutory or constitutional rights. Meyers v. Balt. Cty., 713 F.3d 723, 731 (4th Cir. 2013) (citing Harlow, 457 U.S. at 818). Saucier v. Katz gives a two-step approach to determine whether qualified immunity applies: 1) determine whether the facts, taken in the light most favorable to the non-movant, establish that the officer violated a constitutional right and 2) if the right was clearly established to a reasonable person. 533 U.S. 194, 201 (2001).

While issues of qualified immunity should be addressed "at the earliest possible stage in litigation," Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citation omitted), the Pearson court also noted the difficulty of determining qualified immunity at the pleading stage. See id. at 238–239 ("When qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify."). Discovery may proceed if the district court concludes 1) that the plaintiff alleged a violation of a clearly established right, but 2) that there

existed a material factual dispute over what actually occurred, and 3) under the defendant's version, a reasonable official could have believed that his conduct was lawful. DiMeglio v. Haines, 45 F.3d 790, 795 (4th Cir. 1995); see also Raynor v. Pugh, 817 F.3d 123, 130 (4th Cir. 2016) (holding that discovery is appropriate when there is a genuine dispute of material fact). If discovery is allowed to proceed, it should be prioritized toward resolving the issue of qualified immunity. Crawford-El v. Britton, 523 U.S. 574, 600 (1998).

Here, Plaintiff alleges that police Defendants used unlawful, excessive force against Decedent, who did not pose an immediate danger to himself or others. (Doc. No. 2, p. 4). The Fourth Amendment prohibits police from using excessive force to make an arrest. Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). Excessive force is determined using a standard of "objective reasonableness" under the circumstances. Graham, 490 U.S. at 398. To determine if force is objectively reasonable, courts can consider several factors, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [suspect] is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. The Fourth Circuit has previously found that law enforcement officials use of "unnecessary, gratuitous, or disproportionate force" against a person that "presented no threat to the safety of the officer . . . and who was compliant" was a violation of a clearly established Constitutional right. Yates v. Terry, 817 F.3d 877, 878 (4th Cir. 2016).

Individual Defendants argue that dismissal is appropriate under Rules 12(b)(1), 12(b)(2), 12(b)(6) and alternatively, summary judgment under Rule 56. (Doc. No. 22, p. 1–2). As explained before, Rule 12(b)(1) and 12(b)(2) do not apply to questions of qualified immunity from federal

claims.  As to dismissal under Rule 12(b)(6), Plaintiff's complaint alleges that Decedent did not brandish a firearm, was cooperative with police instructions, and was still killed by police.  (Doc. No. 2, p. 5).  According to Iqbal, this Court must take these factual pleadings as true.  Iqbal, 556 U.S. at 678.  If true, Plaintiff certainly alleges a plausible claim for excessive force.  Individual Defendants' request for dismissal under Rule 12(b)(6) is therefore denied.

As to summary judgment, the current evidence does not allow for this Court to determine, as a matter of law, that Individual Defendants are entitled to qualified immunity at this time.  An alleged eyewitness has submitted an affidavit stating that Decedent did not possess a gun and appeared to comply with police orders.  (Doc. No. 26-4, p. 4).   Taking this evidence in the light most favorable to Plaintiff, as the nonmoving party, Plaintiff has established the violation of a clearly established Constitutional right.  See Yates, 817 F.3d at 878 (holding that the use of excessive force against an unarmed and compliant person is a violation of a clearly established right).  However, it is unclear in the limited record before this Court whether responding officers had been informed that Decedent was armed.  This dispute brings into question whether Decedent "pose[d] an immediate threat to the safety of the officers or others[.]"  See Graham, 490 U.S. at 396. The Court finds that this is a material factual dispute and therefore declines to grant qualified immunity to Individual Defendants at this time.  See DiMeglio, 45 F.3d at 795.

Gaston County also asserts qualified immunity as a basis to dismiss Plaintiff's third claim for failure to train under Rule 12(b)(1), 12(b)(2), and in the alternative, summary judgment.  (Doc. No. 24, p. 1–3).  For the reasons stated above, 12(b)(1) and 12(b)(2) are not applicable on this issue.  Therefore, this Court must determine if summary judgment is appropriate at this time to Gaston County's qualified immunity.

While a municipality cannot be liable under §1983 on a theory of *respondeat superior*, the municipality can be liable if it causes the constitutional violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). "[T]he inadequacy of police training may serve as the basis for §1983 liability only where the failure to train amounts to deliberate indifference to the rights with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). A municipality is deliberately indifferent to constitutional rights when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights." Id. at 390.

Here, Defendant Gaston County contends that the officers in question were properly trained. (Doc. No. 25, p. 8). However, the only evidence that the court has regarding the operating policies of Gaston County comes from the affidavit of police trainer Dave F. Cloutier, which states:

> I am familiar with the training and experience provided to the defendant officers, and I believe they were properly hired and retained as law enforcement officers. In fact I believe they were exceptionally trained to the point of exceeding the State requirements, and adequately supervised by the GCPD prior and on the date of this incident. My review of the GCPD policies and procedures relative to this matter revealed that the policy sets forth appropriate standards for the proper and reasonable use of force and specifically, deadly force. Moreover the GCPD police neither authorizes nor promotes constitutional violations for use of force.

(Doc. No. 22-9, p. 3–4). This Court finds that the vagueness and subjectivity of this evidence makes it insufficient to determine that Gaston County's police training and operating practices were adequate. Furthermore, Cloutier's opinion relies on officer testimony that Decedent had a gun in his hand and refused to comply with officer directions. (Doc. No. 22-9, p. 6–9). As mentioned before, this factual version of the confrontation contradicts Plaintiff's version of the facts. Since factual disputes are resolved in favor of the non-movant, this makes this opinion even less adequate. See Tolan, 134 S. Ct. at 1866. Furthermore, Gaston County, in its supplemental

brief, argues that Gaston County cannot be held liable for failure to train, "because there was no underlying constitutional violation for the use of force." (Doc. No. 25, p. 8). However, the underlying constitutional violation is a material dispute in the case. Therefore, for these reasons, this Court denies Gaston County's request for qualified municipal immunity to the failure to train claim at this time and denies their Motion for Summary Judgment without prejudice to reraise these arguments following discovery.

B. <u>State Law Claims for Assault and Battery</u>

Gaston County and Individual Defendants in their official capacities claim governmental immunity against Plaintiff's state law claims for assault and battery. (Doc. No. 23, p. 10–13; Doc. No. 25, p. 9–12). Individual Defendants also contend that they have public officer immunity in their individual capacities. (Doc. No. 23, p. 13–15).

For state law claims, this Court is bound to apply state law to all substantive issues. See <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, 78 (1938) (holding that the federal courts do not have power to "declare substantive rules of common law" in a state). Under North Carolina state law, counties in North Carolina may waive governmental immunity "to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function." N.C. Gen. Stat. § 153A-435 (2016). Even if the municipality has insurance coverage, governmental immunity is not waived if the insurance policy has a clear provision excluding claims that would qualify for governmental immunity. <u>Wright v. Gaston Cty.</u>, 698 S.E.2d 83, 88 (N.C. Ct. App. 2010). Furthermore, governmental immunity applies to municipal employees being sued in their official capacities. See <u>Reid v. Town of Madison</u>, 527 S.E.2d 87, 89 (N.C. Ct. App. 2012) ("[I]n a suit

9

against a public employee in his official capacity, the law entitles the employee to the same protection as that of the entity.")

Here, it is not in dispute that Gaston County has procured insurance. This insurance contains an exclusion provision, which states:

> For any amount for which the Insured would not be liable under applicable governmental or sovereign immunity but for the existence of this Policy; the issuance of this insurance shall not be deemed a waiver of any statutory immunities by or on behalf of any insured . . . .

(Doc. No. 22-1, p. 19). In her response to the Defendant's Motions to Dismiss, Plaintiff does not contest that Gaston County is entitled to governmental immunity from state law tort claims. This Court finds that Gaston County has not waived its governmental immunity through its purchase of insurance. Therefore, Plaintiff's state law claims are dismissed for lack of jurisdiction against Gaston County and Individual Defendants in their official capacities. See Medina v. United States, 259 F.3d 220, 223–24 (4th Cir. 2001) (holding that governmental immunity is a question of jurisdiction under North Carolina law).

Individual Defendants also claim public officer immunity towards liability for state law claims in their individual capacities. Under North Carolina law, "'[t]he public immunity doctrine protects public officials from individual liability for negligence in the performance of their governmental or discretionary duties." Campbell v. Anderson, 576 S.E.2d 726, 730 (N.C. Ct. App. 2003). Only "'[a]ctions that are malicious, corrupt, or outside the scope of official duties will pierce the cloak of official immunity . . . .'" Turner v. City of Greenville, 677 S.E.2d 480, 483 (N.C. Ct. App. 2009) (citation omitted). Similar to federal courts, North Carolina Courts require the evidence to be construed in light most favorable to non-movant when determining public officer immunity. Id.

North Carolina state courts have interpreted § 15A-401(d)(2) to determine when police officers are entitled to immunity from individual liability. See id. at 484 (finding that § 15A-401(d)(2) "was designed solely to codify those situations in which a police officer may use deadly force without fear of incurring criminal or civil liability") (citation omitted). Section 15A-401(d)(2) states, in relevant part:

> A law enforcement officer is justified in using deadly physical force upon another person . . . only when it is or appears to be reasonably necessary thereby . . . [t]o defend himself or a third person from what he reasonably believes to be the use or imminent use of deadly physical force . . . . Nothing in this subdivision constitutes justification for willful, malicious or criminally negligent conduct . . . *nor shall it be construed to excuse or justify the use of unreasonable or excessive force.*

N.C. Gen. Stat. § 15A-401(d)(2) (2016) (emphasis added).

Here, taking the evidence in light most favorable to Plaintiff, this Court cannot conclude as a matter of law that Individual Defendants are entitled to public official immunity at this time. As mentioned before, there is a material dispute of fact as to whether Decedent was an imminent threat. If Decedent did not pose a reasonable imminent threat to police, then the Defendants' use of deadly force may be excessive and therefore not excused under § 15A-401(d)(2). The Court therefore denies Individual Defendants' request to dismiss this claim against their individual capacities without prejudice to reraise these arguments following discovery.

C. Plaintiff's Americans with Disabilities Act claim

Gaston County also asks for a Rule 12(b)(6) dismissal of Plaintiff's claim for discrimination under the Americans with Disabilities Act ("ADA"). (Doc. No. 24, p. 2).

Here, Plaintiff claims relief under Title II of the ADA alleging that Gaston County failed to "provide [Decedent] with communication that was as effective as communication provided to the general public[.]" (Doc. No. 2, p. 10). Plaintiff alleges that Gaston County dispatched law

enforcement in full tactical gear to surround Decedent without considering an intermediate use of force. (Doc. No. 2, p. 6). Plaintiff contends in the Complaint that police shouted contradictory instructions at Decedent, making compliance with all orders impossible. Id. at 4. Plaintiff argues that Gaston County should be liable under the ADA because it failed to train and supervise agents in "reckless disregard of Plaintiff's rights" and because the agents failed to adequately communicate with Decedents. Id. at 6. Gaston County argues that "exigent circumstances" absolved their duty to provide reasonable accommodation. (Doc. No. 25, p. 13). Furthermore, Gaston County contends that the Fourth Circuit has held that failure to train police officers to deal with mentally ill individuals can never amount to discrimination. Id.

This Court finds that Gaston County has misinterpreted the law in this circuit. The Fourth Circuit has not addressed the issue of whether failure to train could amount to liability under the ADA. Waller v. City of Danville, 556 F.3d 171, 177 n.3 (4th Cir. 2009) ("[W]e do not reach the question of whether the ADA supports a claim for failure to train."). Notably, the Fourth Circuit declined to adopt the language in the district court opinion that Gaston County cited regarding an overall rejection of an ADA failure to train claim. Compare id. with Waller v. City of Danville, 515 F. Supp. 2d 659, 665 (W.D. Va. 2007). Furthermore, other district courts have found "there is no indication in Waller, or in any other Fourth Circuit decision . . . that would indicate that the Fourth Circuit would not recognize an ADA Title II failure to train claim under the appropriate circumstances." Estate of Saylor v. Regal Cinemas, Inc., 54 F. Supp. 3d 409, 424 (D. Md. 2014).

The Fourth Circuit has also explicitly rejected the idea of a separate "exigent circumstances" test. Seremeth v. Bd. of Cty. Comm'rs Frederick Cty., 673 F.3d 333, 339 (4th Cir. 2012). Instead, the exigency of the circumstances is only one factor used to determine whether or

not accommodations were reasonable.  Id.  Furthermore, ADA reasonable accommodation requirements apply even to police responses to domestic disturbances.  See id. at 340 ("What constitutes reasonable accommodations during a police investigation for a domestic disturbance is a question of fact and will vary according to the circumstances.").  In situations in which a reasonable officer would fear for his safety and the safety of others, ADA accommodations may be less appropriate.  Id.

Based on the limited record before the Court, the Court denies this portion of Defendant's motion without prejudice to be reraised at summary judgment.

D. Further Discovery

This Court denies all of the immunity defenses without prejudice and recognizes the need to be cautious moving forward with this case.  Typically, discovery in this case should proceed in a limited manner narrowly tailored to the issue of whether qualified immunity is appropriate.  See Anderson, 483 U.S. at 646 n.6; see also Crawford-El, 523 U.S. at 599; Raynor, 817 F.3d at 130 n.5.  Here, however, because the immunity defenses are so intertwined with the allegations of the case, the Court finds that normal discovery protocol will assist the Court and the Court will revisit immunity if reasserted at summary judgment.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motions to Dismiss (Doc. Nos. 22, 24) are hereby GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART.  As explained above, the state law claims against Gaston County and its employees in their public capacities are DISMISSED due to governmental immunity.  Dismissal of Plaintiff's other claims are not appropriate at this time based on the limited record before the Court.  The Court's ruling is without

13

prejudice so that Defendants may reassert their arguments at summary judgment following discovery.

IT IS FURTHER ORDERED that the parties are directed to immediately confer pursuant to Rule 26 and submit a Rule 26(f) report so that this Court can promptly issue a case management order.

**IT IS SO ORDERED.**

Signed: August 11, 2016

Frank D. Whitney
Chief United States District Judge