# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO.  3:15-CV-309-DCK

| | | |
|---|---|---|
| GENGER POOLE, as Administrator of the Estate of William Dean Poole, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER** |
| GASTON COUNTY;  T.R. EARL;  J.E. KNUPP;  A.O. HOLDER;  and W.P. DOWNEY, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion To Compel" (Document No. 84).  The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C §636(c), and this motion is ripe for disposition.  Having carefully considered the motion and the record, the undersigned will <u>grant</u> the motion.

## FACTUAL BACKGROUND

On March 16, 2015, William Dean Poole ("Poole") called the Veteran's Crisis Line and expressed an intention to commit suicide.  (Document No. 2, p.3;  Document No. 26, pp.4-7).  The Veteran's Crisis Line then called 911.  <u>Id.</u>  Gaston County Police were dispatched to the scene and observed Mr. Poole on a lawn mower alone in the yard.  (Document No. 2, p.4;  Document No. 22-11, p.2;  Document No. 26, pp.7-8).  Police approached Mr. Poole, and after a brief confrontation, Poole was shot by multiple officers and killed.  (Document No. 2, p.4;  Document No. 26, p.8).  Plaintiff does not dispute these facts, and these facts mirror the alleged facts in the Complaint. (Document No. 2).

There are factual disputes about the actual confrontation. Defendants have submitted affidavits from the responding officers that say that Poole, upon seeing police, drew a firearm from a holster, raised the firearm in the air, and lowered the firearm towards the police officers. (Document. Nos. 20-10, 20-11, 20-12, and 20-13). The officers responded to this action by discharging their weapons and killing Poole. Id. However, Plaintiff alleges that Mr. Poole did not brandish a weapon and complied with police orders. (Document. No. 2, p.5; Document No. 26, p.8).

On March 17, 2015, attorneys Charles Ali Everage and S. Juwaun Seegars met with Genger Poole, regarding the March 16, 2015 shooting death of her husband, William Dean Poole. (Document No. 88, pp.1-2). That same day, Mr. Everage and Mr. Seegars ("Plaintiff's counsel") met with J.C. Dowell, Jr. ("Dowell"), a neighbor and witness to the shooting. (Document No. 88, p.2). Plaintiff's counsel immediately took a written statement of Mr. Dowell, who appeared to be of advanced age and in poor health. Id.; see also, (Document No. 26-4).

Plaintiff previously submitted Mr. Dowell's statement in responding to "Defendant Gaston County's Rule 12 Motion To Dismiss." See (Document No. 26-4). Dowell stated he was an eyewitness to the confrontation and that Poole appeared to cooperate with police requests to raise his hands in the air. Id. Dowell also alleges that Poole did not have a gun in his hand when he raised his hands in the air, but instead may have been holding something square and flat, like a wallet. Id.

Due to Mr. Dowell's advanced age and poor health, Plaintiff's attorneys contracted with private investigator Charles Williams ("Williams") to take a recorded statement of Mr. Dowell in the presence of a videographer on May 19, 2015. Id. Also on that date, Williams took statements from additional witnesses and others in the immediate neighborhood of where the shooting

occurred, as well as statements from Genger Poole and her family members, including Robert Hinson and Tabitha Hinson.  Id.

## PROCEDURAL BACKGROUND

Genger Poole ("Plaintiff"), as Administratrix of the Estate of William Dean Poole, initiated this action with the filing of her "Complaint" (Document No. 2) on July 17, 2015.  The Complaint asserts a wrongful death action based on the alleged shooting of Poole on March 16, 2015, by Sergeant J.E. Knupp ("Knupp"), Sergeant W.P. Downey ("Downey"), Officer T.R. Earl ("Earl"), and/or Officer A.O. Holder ("Holder") of the Gaston County, North Carolina Police Department. (Document No. 2).  Specifically, Plaintiff asserts causes of action for:  (1) excessive force in violation of 42 U.S.C. § 1983 and the Fourth Amendment against Gaston County;  (2)  excessive force in violation of 42 U.S.C. § 1983 and the Fourth Amendment against Knupp, Downey, Earl, and Holder;  (3) public entity liability, pursuant to 42 U.S.C. § 1983, against Gaston County;  (4) assault and battery against all Defendants;  and (5) violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, against Gaston County.  Id.

"Defendants J.E. Knupp, W.P. Downey, T.R. Earl, And A.O. Holder's Rule 12 Motions To Dismiss" (Document 22)  and "Defendant Gaston County's Rule 12 Motion To Dismiss" (Document No. 24) were filed on September 28, 2015.  On August 11, 2016, the Honorable Frank D. Whitney, Jr. issued an "Order" (Document No. 32) granting the motions in part, and denying the motions without prejudice in part.  Chief Judge Whitney stated that "the state law claims against Gaston County and its employees in their public capacities are DISMISSED due to governmental immunity. Dismissal of Plaintiffs' other claims are not appropriate at this time based on the limited record before the Court."  (Document No. 32, p.13).

On September 1, 2016, the parties filed their "Certification And Report Of F.R.C.P. 26(f) Conference And Discovery Plan" (Document No. 38).  In that filing, the parties indicated that they consent to the jurisdiction of a U.S. Magistrate Judge in this case.  (Document No. 38, p.2).  The parties' "Joint Stipulation Of Consent To Exercise Jurisdiction By A United States Magistrate Judge" (Document No. 52) was then filed on September 7, 2016, and this matter was immediately assigned to Magistrate Judge David C. Keesler as the presiding judge.

The undersigned issued a "Pretrial Order And Case Management Plan" (Document No. 58) on September 9, 2016.  The "…Case Management Plan" includes the following deadlines: discovery completion – June 16, 2017;  mediation report – July 1, 2017;  dispositive motions – July 14, 2017;  and trial– January 2, 2018.  (Document No. 58).  The trial of this case, if necessary, has since been re-set for the undersigned's civil term beginning October 30, 2017.  (Document No. 73).

Defendants contend that Plaintiff submitted initial disclosures on October 17, 2016, but failed to identify witness statements given by several individuals.  (Document No. 85, p.2).  After receiving a letter addressing allegedly deficient discovery responses, Plaintiff provided the video statement of J.C. Dowell, Jr., on or about March 8, 2017, but asserted attorney-work privilege regarding the other video statements.  Id.

Now pending before the Court is "Defendants' Motion To Compel" (Document No. 84) and "…Memorandum Of Law In Support…" (Document No. 85), filed on March 17, 2017.  "Plaintiff's Response In Opposition To Defendants' Motion To Compel" (Document No. 88) was filed on March 31, 2017;  and "Defendants' Reply…" (Document No. 90) was filed on April 11, 2017.  The pending motion is ripe for review and disposition.

**STANDARD OF REVIEW**

Rule 26 of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1). The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed.R.Civ.P. 26(c)(1).

Whether to grant or deny a motion to compel is generally left within a district court's broad discretion. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (denial of motions to compel reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting District Court's substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same). A party's failure to provide or permit discovery may result in sanctions including the following: reasonable expenses caused by the failure; default judgment against the disobedient party; or treating as contempt of court the failure to obey any order. See Fed.R.Civ.P. 37(a) - (d).

**DISCUSSION**

By the pending motion, Defendants request that the Court compel Plaintiff to provide all the video witness statements reviewed by Plaintiff's expert witness, Roy G. Taylor ("Taylor"), and

compel Plaintiff to provide full and complete answers to Defendants' interrogatories and request for production of documents. (Document No. 84; Document No. 85, pp.1-2).

## A.   Video Witness Statements

First, Defendants note that Mr. Taylor reviewed several video witness statements when formulating his opinion in this matter, but despite being served with a subpoena commanding the production of all materials Taylor reviewed, Plaintiff has objected and asserted that all but one of the video statements are protected pursuant to attorney-work product privilege. (Document No. 85, p.4) (citing Document Nos. 84-6, 84-7 and 84-10). Defendants contend that Taylor reviewed video statements of J.C. Dowell, Lorrie Martin, Dwayne Moore, Genger Poole, Bill Flanders, Mrs. Hinson, and Robert Hinson. (Document No. 85, p.2) (citing Document No. 84-11) (citing Document No. 84-7, p.14).[1] To date, only the video statement of Dowell, who is now deceased, has been provided to Plaintiffs. (Document No. 85, p.2; Document No. 88, p.6).

Defendants argue that "[i]t is axiomatic that if one party's expert reviews certain material in forming their opinions then the other party's expert is entitled to the same. A litigant is required to disclose to his opponent any information 'considered' by the litigant's testifying expert." (Document No. 85, pp.4) (citing Nutrasweet Co. v. X-L Engineering Co., 227 F.3d 776, 785-86 (7th Cir. 2000)). Defendants contend that an overwhelming majority of courts addressing the issue before this Court have concluded pursuant to Fed.R.Civ.P. 26(a)(2)(B), a party must disclose all information provided to its testifying expert for consideration in the expert report, including information otherwise protected by attorney-client privilege or the work product privilege. Id. (citations omitted).

---

[1] Plaintiff notes that the correct identities of the persons interviewed on video by its private investigator are: J.C. Dowell, Laurie Martin, Wayne Moore, Genger Poole, Bill Landry, Tabitha Hinson, and Robert Hinson. (Document No. 88, p.4).

Included among Defendants' numerous citations is an instructive decision from the United

States District Court for the District of South Carolina. (Document No. 85, pp.4-5). In American

Fidelity Assurance Co. v. Boyer, 225 F.R.D. 520 (D.S.C. 2004) the South Carolina court relied in

part on the commentary to Rule 26(a)(2)(B), which provides that:

> Paragraph (2)(B) requires that persons retained or specially
> employed to provide expert testimony, or whose duties as an
> employee of the party regularly involve the giving of expert
> testimony, must prepare a detailed and complete written report,
> stating the testimony the witness is expected to present during direct
> examination, together with the reasons therefor. . . . Rule
> 26(a)(2)(B) does not preclude counsel from providing assistance to
> experts in preparing the reports, and indeed, with experts such as
> automobile mechanics, this assistance may be needed.
> Nevertheless, the report, which is intended to set forth the substance
> of the direct examination, should be written in a manner that reflects
> the testimony to be given by the witness and it must be signed by
> the witness.
>     The report is to disclose the data and other information
> considered by the expert and any exhibits or charts that summarize
> or support the expert's opinions. Given this obligation of disclosure,
> **litigants should no longer be able to argue that materials
> furnished to their experts to be used in forming their opinions--
> whether or not ultimately relied upon by the expert--are
> privileged or otherwise protected from disclosure when such
> persons are testifying or being deposed**.

See Advisory Committee Notes to Fed.R.Civ.P. 26 (emphasis added), and American Fidelity

Assurance Co., 225 F.R.D. at 521.

American Fidelity Assurance Co. also cites Musselman v. Phillips, 176 F.R.D. 194 (D.Md.

1997) for its finding that a number of courts and commentators have concluded that, under Rule

26(a)(2)(B), "if an attorney provides work product to an expert who considers it in forming

opinions which he or she will be testifying to at trial, this information is no longer privileged and

must be disclosed." American Fidelity Assurance Co., 225 F.R.D. at 521 (quoting Musselman v.

Phillips, 176 F.R.D. at 197). See also Karn v. Ingersoll-Rand, 168 F.R.D. 633, 639-41 (N.D.Ind.

1996) ("Rule 26(a)(2)(B) requires disclosure of any information considered by a testifying expert in reaching his or her opinion, which means anything reviewed by an expert who will testify, including written or oral lawyer-expert communications, even though such information may constitute opinion work product"), and In re Pioneer Hi-bred Int'l, Inc., 238 F.3d 1370, 1375-76 (Fed. Cir. 2001) ("the 1993 amendments to Rule 26 of the Federal Rules of Civil Procedure make clear that documents and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report").

Defendants conclude that they are entitled to review all the video statements considered by Plaintiff's expert, Roy Taylor. (Document No. 85, pp.5-6).

In addition, Defendants assert that Plaintiff failed to make proper disclosures of the video statements pursuant to Fed.R.Civ.P. 26(a)(1)(A)(ii). (Document No. 85, p.6) (citing Fed.R.Civ.P. 26(a); 34(a); and 37(a)(3)(A). Defendants also argue that Plaintiff should now be compelled to supplement her disclosures. (Document No. 85, p.6).

In response, Plaintiff contends that the video statements are protected by the work product privilege, and that there is no evidence that Taylor relied on "these privileged statements." (Document No. 88, p.5). The crux of Plaintiff's argument in response to the motion to compel is that in disclosing Mr. Dowell's video statements, Plaintiff "inadvertently included other privileged recorded statements prepared by Plaintiff's attorney/private investigator," and therefore, the work product privilege was not waived. Id. (quoting Nutramax Labs., Inc. v. Twin Labs. Inc., 183 F.R.D. 458, 463-64 (D.Md. 1998) (quoting In re Doe, 662 F.2d 1073, 1081 (4th Cir. 1981) (work product privilege "can only be waived or forfeited by actions of the attorney or client which are

consistent with a 'conscious disregard of the advantage that is otherwise protected by the work product rule.'").

Plaintiff further argues that this Court should follow other district courts within the Fourth Circuit and apply an "intermediate balance approach" to determine whether inadvertent production of work-product protected material constitutes waiver; even though the cases cited by Plaintiff acknowledge that the Fourth Circuit has yet to decide which approach it will follow, *and* point out that the Fourth Circuit is "more inclined to adopt the strict approach than the intermediate or lenient one." (Document No. 88, p.3) (citing Victor Stanley, Inc. v. Creative Pipe, Inc., 250 F.R.D. 251, 257-59 (D.Md. 2008) (citing Hopson v. Mayor of Baltimore, 232 F.R.D. 228, 235-38 (D.Md. 2005)).

Under the strict approach, there is a waiver of attorney work-product protection of inadvertent production "because once disclosed, there can no longer be any expectation of confidentiality." Stanley, 250 F.R.D. at 258. The intermediate test requires the court to balance the following factors to determine whether inadvertent production of attorney-client privileged materials waives the privilege: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the number of inadvertent disclosures; (3) the extent of the disclosures; (4) any delay in measures taken to rectify the disclosure; and (5) overriding interests in justice. Id. (citing McCafferty's, Inc., v. Bank of Glen Burnie, 179 F.R.D. 163, 167 (D.Md.1998)); see also (Document No. 88, p.3).

In reply, Defendants argue that even though Taylor did not specifically mention the interviews in his report, he "testified that he did review the video interviews and thus would have considered their impact." (Document No. 90, p.2) (citing Document No. 90-1). Defendants then

re-assert that courts have directly addressed the essence of Plaintiff's arguments elsewhere and

have held:

> amendments to Rule 26 of the Federal Rules of Civil Procedure make clear that documents and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report. Rule 26(a)(2) requires that the testifying expert's report "contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; ...." The accompanying Advisory Committee Note explicitly states that "[t]he report is to disclose the data and other information considered by the expert.... Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions— whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." *See also TV-3, Inc. v. Royal Ins. Co. of Am.,* 194 F.R.D. 585, 589 (S.D.Miss. 2000) (correspondence between counsel and expert witness is discoverable, "given plain language of Rule 26(a)(2) and its accompanying Advisory Committee Note"). The revised rule proceeds on the assumption that fundamental fairness requires disclosure of all information supplied to a testifying expert in connection with his testimony. Indeed, we are quite unable to perceive what interests would be served by permitting counsel to provide core work product to a testifying expert and then to deny discovery of such material to the opposing party.

(Document No. 90, p.2) (quoting In re Pioneer Hi-Bred International, Inc., 238 F. 3d 1370, 1375-

76 (Fed. Cir. 2001).

Defendants suggest that fact based work-product may be subjected to the intermediate test

outlined by Plaintiff;  "[h]owever, when the materials are provided to an expert no such test is

needed."  (Document No. 90, p.3).  See also Lamonds v. GMC, 180 F.R.D. 302, 305 (W.D.Va.

1998) ("Where, however, an attorney provides work product material to one of her retained experts

to be considered in the formulation of that expert's opinion, the current rules and Advisory

Committee's Notes strongly suggest that that information is discoverable.").  In addressing a

similar situation to the present case where a plaintiff argued that the expert did not rely on the disclosed materials, the Lamonds court opined that "asking a court to determine whether an expert actually relied on work product documents involves exploration of the expert's mental processes and risks creation of an unwieldy rule that would not provide certainty as to the protected status of work product materials." Lamonds, 180 F.R.D. at 306. See also Suskind v. Home Depot Corp., 2001 WL 92183 at *4 (D.Mass. Jan. 2, 2001) ("it is improper to restrict disclosure to only those materials relied on by the expert witness. The word is 'considered' and encompasses those materials which the witness was furnished and read but which the witness rejected.")

Defendants conclude that where, as here, "it is undisputed that Plaintiff provided the claimed privileged materials to her expert and her expert reviewed said materials in formulating his opinions," the "Plaintiff has waived the privilege and should be compelled to provide the materials requested." (Document No. 90, p.3).

The Court finds Defendants' arguments persuasive. The undersigned is particularly struck by Plaintiff's failure to address Defendants' main argument and supporting authority. See (Document No. 88). The response does not address or attempt to distinguish Fed.R.Civ.P. 26(a)(2)(B) and other caselaw cited by Defendants, nor does it identify any other authority regarding disclosure of work product materials to a testifying expert as occurred in this case. Compare (Document No. 85 and 88). See also, S.E.C. v. Reyes, stating:

> Prior to 1993, courts were split on the question of whether communications between an attorney and a testifying expert were discoverable. *See Intermedics, Inc. v. Ventritex, Inc.,* 139 F.R.D. 384, 387 n. 3 (N.D.Cal.1991) (collecting cases). In 1993, however, the discovery rules were amended to require the disclosure of "the data or other information considered by [expert witnesses] in forming [their] opinions." Fed.R.Civ.P. 26(a)(2)(B). Since the amendment, courts have overwhelmingly, though not uniformly, imposed a "bright-line rule" that all materials considered by a testifying expert, including attorney work product, must be

11

disclosed. *Regional Airport Authority of Louisville,* 460 F.3d at 715;
*In re Pioneer Hi–Bred International,* 238 F.3d at 1375; *Karn v.
Ingersoll–Rand,* 168 F.R.D. 633, 637–41 (N.D.Ind.1996). *But see
Haworth, Inc. v. Herman Miller, Inc.,* 162 F.R.D. 289, 292–96
(W.D.Mich.1995). This Court concurs in the "majority view" that
Rule 26(a)(2)(B) requires the disclosure of all materials considered
by, presented to, or relied upon by a testifying expert in forming his
or her opinions, regardless of whether they might otherwise be
protected by the work-product privilege. *Regional Airport
Authority of Louisville,* 460 F.3d at 715.

S.E.C. v. Reyes, 2007 WL 963422, at *1, n.1 (N.D.Cal. Mar. 30, 2007).

The undersigned finds that Fed.R.Civ.P. 26(a)(2)(B), and the Advisory Committee Notes

and cases addressing that Rule, favor production of the materials provided to Plaintiff's expert,

even if they were provided inadvertently. In addition to the foregoing, the undersigned finds two

other cases instructive on this point. In In Re Vioxx, for example, the court specifically declined

"to carve out an exception into this 'bright-line' rule for instances where core attorney work

product is inadvertently disclosed to testifying experts." In Re Vioxx, 2007 WL 1558700, at *3-4

(E.D.La. May 30, 2007). Likewise, in U.S. Energy Corp. v. Nukem, Inc., the Colorado court found

support for the conclusion that "even an inadvertent disclosure of attorney work product to a

testifying expert destroy[s] any privilege which might have attached." U.S. Energy Corp. v.

Nukem, Inc., 163 F.R.D. 344, 348 (D.Colo. 1995) (citing Boring v. Keller, 97 F.R.D. 404 (D.Colo.

1983)).

Finally, as noted above, Plaintiff's own cases suggest that the most likely position the

Fourth Circuit would adopt in this case would be to require the production of the video statements

to Defendants. See Victor Stanley, Inc. v. Creative Pipe, Inc., 250 F.R.D. 251, 257-59 (D.Md.

2008) and Hopson v. Mayor of Baltimore, 232 F.R.D. 228, 235-38 (D.Md. 2005).

Based on the foregoing, the undersigned directs Plaintiff's counsel to provide Defendants'

counsel a copy of all the video statements viewed by Roy Taylor while reviewing this matter, on

or before **May 19, 2015**.  To the extent Defendants argue that Plaintiff failed to make proper initial

disclosures pursuant to Rule 26, based on subsequent briefs, it appears that situation has been

resolved.  See (Document No. 88, pp.6-7;  (Document No. 90).  If it is not resolved, Plaintiff should

supplement her initial disclosures.

**B.      Discovery Requests**

Next, Defendants contend Plaintiff has failed to adequately respond to several discovery

requests.  The undersigned will address each disputed request in turn below.

**Interrogatory No. 11**

11.      Specifically identify the deficiencies in the Gaston County Police Department's training
of officers that you contend caused the injury as alleged in the Complaint.

**ANSWER:  Plaintiff objects to this interrogatory which is overly broad. Defendant failure to provide training to its officers as to dealing with emotionally disturbed individuals amounted to deliberate indifference to the Constitutional rights of and protections of Decedent under the Americans with Disability Act. Without attempting to communicate verbally, four officers brandishing a shotgun and assault rifles quickly advancing toward the Decedent's property.  Without coordinating a negotiator or medical specialist, Defendant engaged suspect with deadly force.**

**After observing Decedent and his wife peacefully on his property not presenting a threat to himself or others, Defendant advance on Decedent's property with assault weapons and deployed deadly force.**

**Defendant officers used deadly force against Decedent who was lawfully in possession of a firearm on his person on his property but did not point or display the gun against anyone.**
**Defendant failed to train its officers on the proper use of verbal commands in deadly force situations. Multiple officers screamed conflicting commands of "don't move" while others screamed "put your arms in the air."**

(Document No. 84-4, p.4).

Defendants argue that Plaintiff's response is deficient because Plaintiff does not specify

how the interrogatory is overly broad or identify what training procedure was deficient or how it

was deficient.  (Document No. 85, p.7).  In response, Plaintiff fails to adequately address

Defendant's allegation in its response.  (Document No. 88, p.7).

The undersigned is not persuaded that Interrogatory 11 is overly broad. The Complaint alleges in part that "Gaston County Police had policies, customs, usages, procedures and training that allowed and promoted excessive and/or improper use of deadly force against individuals suffering from emotional distress or a mental health crisis." (Document No. 2, p.5). However, Plaintiff's response to the interrogatory fails to specifically identify deficiencies in Gaston Police Department's training, other than an alleged failure to train on the use of proper verbal commands. (Document No. 84-4, p.4). As such, Plaintiff shall supplement her response to identify any other deficiencies in the training of Gaston County Police Department's officers that she alleges caused the injury alleged in the Complaint.

**Interrogatory No. 12**

12.     If you denied Request for Admission No. 5, identify all policy, custom, usage, procedure, or training that promoted the use of unlawful deadly force on individuals in 2015.

**ANSWER: Plaintiff objects to this interrogatory which is overly broad. Without waiving said objection, Plaintiff has not been provided with all of Defendant's policies and training. Based on information and belief, there is evidence that Defendant's policies, custom, usage, procedure, or training or the lack thereof in the areas of use of force, verbal commands, de-escalation techniques, interacting with suicidal, disabled or emotionally disturbed individuals caused this unlawful use of deadly force.**

(Document No. 84-4, p.4).

Defendants note that Plaintiff specifically denied their request for admission "that the Gaston County Police Department did not have a policy, custom, usage, procedure or training that promoted using deadly force on individuals in 2015." (Document No. 85, p.8) (citing Document No. 84-4, p.10). Defendants contend that by this interrogatory they are simply seeking the basis for Plaintiff's denial.

In response, Plaintiff now states that Defendants *may* have lacked proper training, and that Defendants' customs and usages are unknown to her. (Document No. 88, pp.8-9). Plaintiff suggests she will supplement her response in due course. Id.

The undersigned again disagrees that Defendants' request is overly broad. Rather, it stems directly from one of Plaintiff's allegations in the Complaint, as identified above. Therefore, the undersigned finds good cause to require Plaintiff to supplement her response to this interrogatory and further explain and/or identify the alleged policies, customs, usage, and/or training that she contends promoted the use of deadly force on individuals in 2015.

**Request for Production No. 16**

16.    Copies of any document or item you relied upon in support of your response to interrogatory No. 11.

**RESPONSE: Plaintiff objects to this request which is overly broad and unduly burdensome. Without waiving said objection, see exhibit 1. Plaintiff also relied on the numerous documents produced by Defendant in this matter.**

(Document No. 84-4, p.7).

By the instant motion, Defendants contend that Plaintiff has failed to identify any specific policy or procedure of the Gaston County Police Department, or which documents it relied upon in responding to Interrogatory No. 11. (Document No. 85, p.8).

In response, Plaintiff "seeks leave to supplement its response." (Document No. 88, p.8).

Based on the foregoing, the undersigned finds that this request is not overly broad or unduly burdensome, and that Plaintiff should produce responsive documents.

**Request for Production No. 17**

17.    If you denied Request for Admission No. 4, produce all documents or items indicating where you were stationed, when, and for how long.

**RESPONSE: Plaintiff objects to this request which is not likely to lead to relevant or probative evidence. Without waiving said objection, see exhibits 5-7, United States Navy records.**

(Document No. 84-4, p.7).

Defendants assert that the documents Plaintiff provided were not responsive to this request and provide no details on where Mr. Poole was stationed. (Document No 85, p.8).

15

In response, Plaintiff suggests that this request is not relevant, but that she has produced all available Navy documents in her possession indicating Mr. Poole's discharge and where he was located or stationed. (Document No 88, p.9). Plaintiff admits these documents are incomplete. Id.

The undersigned observes that Plaintiff has declined to admit that "William Poole was not present at the barracks for the 1st Battalion 8th Marines in Beirut, Lebanon, on October 23, 1983." (Document No. 84-4, p.10). The undersigned further observes that the Complaint alleges that Poole "was [a] physically disabled veteran of the United States Navy. He retired from service on or around 1984...." (Document No. 2, p.3). The Complaint also alleges that "Mr. Poole was disabled due to severe back pain caused by a motorcycle accident and injuries sustained in a terrorist attack against the Marine barracks in Beirut." Id.

The Court directs Plaintiff to supplement her response to the extent possible, and notes that "documents or items indicating where [Poole was] stationed, when, and for how long," are not limited to United States Navy records.

**Request for Production No. 18**

18.    Produce all documents or items in support of your response to Interrogatory No 12.

**RESPONSE: Plaintiff objects to this request which is overly broad and unduly burdensome. Without waiving said objection, see exhibit 1. Plaintiff also relied on the numerous documents produced by Defendant in this matter.**

Defendants again contend that Plaintiff has failed to identify the document it relied upon. (Document No. 85, p.9). In response, Plaintiff suggests she may be able to supplement her response. (Document No. 88).

Based on the foregoing, the undersigned finds that Plaintiff must also supplement her response to this request for production.

**CONCLUSION**

**IT IS, THEREFORE, ORDERED** that "Defendants' Motion To Compel" (Document No. 84) is **GRANTED**. Plaintiff shall provide evidence and responses as directed herein, by **May 19, 2017**, and continue through the remainder of this lawsuit to supplement its responses to Defendants' discovery requests as is necessary and appropriate.

**IT IS FURTHER ORDERED** that Plaintiff shall reimburse Defendants for their reasonable expenses incurred in preparing and filing Document Nos. 84, 85, and 90 in this case. Defendants should reduce their estimated expenses for their "…Memorandum Of Law…" (Document No. 85) based on redundant arguments in parts A. and C. The parties shall attempt to resolve the issue of payment without further Court intervention; if such attempts fail, Defendants may file an appropriate motion to recover expenses.

**IT IS FURTHER ORDERED** that Defendants' shall provide their expert report to Plaintiff's counsel on or before **June 2, 2017**. See (Document No. 87).

**SO ORDERED**.

Signed: May 12, 2017

David C. Keesler
United States Magistrate Judge